# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 19-90** |
| v. | : | |
| **JOSE AYALA-MURRILLO,** a/k/a "Jose Ayala," a/k/a "Jose Ramirez-Murrillo" | : : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

### I. INTRODUCTION

Defendant Jose Ayala-Murrillo unlawfully re-entered the United States in 2014 after having been encountered and removed to Mexico on four separate occasions over the last 20 years. He was most recently encountered in Chester County, Pennsylvania, in December 2018, after local law enforcement found him trapped inside a vehicle he flipped while driving with a blood alcohol level of more than three times the legal limit. The defendant's numerous illegal re-entries, combined with his multiple episodes of driving while intoxicated, demonstrate his disregard for the laws of this country and warrant a sentence within the advisory guidelines range of 15 to 21 months' incarceration.

### II. PROCEDURAL BACKGROUND

On February 7, 2019, the defendant was charged by indictment with one count of reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(1). On March 22, 2019, he entered a guilty plea to the indictment before this Court. A sentencing hearing is scheduled for July 2, 2019, at 12:45 PM.

### III. LEGAL STANDARD

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

(1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (internal citations and quotations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006)). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 516 F.3d 205, 214-18 (3d Cir. 2008).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also*

*Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking [sic] authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing").

In consideration of the advisory guidelines range and the Section 3553(a) factors discussed below, the Government respectfully requests a sentence of incarceration within the advisory guidelines range of 15 to 21 months' incarceration.

## IV.  SENTENCING CALCULATION

### A.  Statutory Maximum Sentence

The statutory maximum penalty for a violation of 8 U.S.C. § 1326(a) is 10 years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment, when enhanced under subsection § 1326(b)(1) due the defendant having been convicted of a felony before his first removal in 2002.

On December 18, 2001, the defendant pleaded guilty to DUI, in violation of 75 Pa.C.S.A. § 3731,[1] in the Chester County Court of Common Pleas, and was sentenced to 30 days to 23 months' imprisonment. PSR ¶ 27. The defendant's 2001 DUI conviction was graded as a second degree misdemeanor under Pennsylvania law, which has a maximum term of imprisonment of two years. *See* 18 Pa.C.S.A. § 1104. Accordingly, the defendant's DUI conviction qualifies as a

---

[1] Pennsylvania's DUI statute was codified at 75 Pa.C.S.A. § 3731 at the time of the defendant's guilty plea and sentencing in December, 2001. Section 3731 was repealed and replaced with 75 Pa.C.S.A. § 3802, effective February 1, 2004 (with no effect on offenses committed before February 1, 2004). Accordingly, the defendant's 2018 DUI arrest was in violation of Section 3802, not Section 3731.

3

felony for purposes of the § 1326(b)(1) enhancement. *See* 18 U.S.C. § 3156(a)(3) (defining "felony" as an offense punishable by a maximum term of imprisonment of more than one year).

### B. Sentencing Guidelines Calculation

The government agrees with the U.S. Probation Office ("USPO") that the defendant's base offense level is eight under U.S.S.G. § 2L1.2(a). PSR ¶ 17.

The defendant's December 18, 2001 conviction for DUI in Chester County, Pennsylvania, qualifies for a six level increase under U.S.S.G. § 2L1.2(b)(2)(C) because this conviction predated his first removal (on February 5, 2002) and was for a "felony offense…for which the sentence imposed exceeded one year and one month." U.S.S.G. § 2L1.2(b)(2)(C). Section 2L1.2 defines "felony" to include any state or local offense punishable by a term of imprisonment exceeding one year. *Id.* at Application Note 2. The defendant's 2001 DUI conviction under 75 Pa.C.S.A. § 3731 was graded as a second degree misdemeanor, which under Pennsylvania law carries a maximum term of imprisonment of two years. *See* 18 Pa.C.S.A. § 1104. Additionally, the defendant's actual sentence – 30 days to 23 months' imprisonment – exceeded one year and one month as required by § 2L1.2(b)(2)(C). Accordingly, the defendant's 2001 DUI conviction is a qualifying felony for purposes of the six point enhancement under § 2L1.2(b)(2)(C).

In order for a conviction to qualify as an enhancement under § 2L1.2, it must also qualify for criminal history points. *See* § 2L1.2, Application Note 3. Under U.S.S.G. § 4A1.2(e)(1), "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted." On December 18, 2001, the defendant was sentenced to 30 days to 23' months imprisonment. Accordingly, the defendant qualifies for the § 2L1.2 (b)(2)(C) enhancement if he commenced the instant reentry offense by December 18, 2016 (within fifteen years of December 18, 2001).

The relevant date for purposes of the 15 year timeframe is the date the defendant illegally reentered the country (2014), not the date he was eventually encountered by law enforcement (December 10, 2018). Section 4A1.2(e)(1) states that any sentence of imprisonment "within fifteen years of the defendant's commencement of the instant offense" is counted, and then further defines "commencement of the instant offense" to include "any relevant conduct." U.S.S.G. § 4A1.2(e)(1), Application Note 8 (citing § 1B1.3 (Relevant Conduct)). Section 1B1.3 defines "relevant conduct" as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). The defendant's illegal 2014 reentry into this country was certainly an action he committed in furtherance of his § 1326 reentry offense; indeed, it would not be logically possible for the defendant to have been found in the United States without him having first reentered the country illegally. The Third Circuit reached this very issue in *U.S. v. Hernandez-Gonzalez*, 495 F.3d 55 (3d Cir. 2007), where it held that for purposes of calculating a defendant's criminal history score under § 4A1.2, it was the date the defendant <u>entered</u> the United States, not the date that he or she was discovered by immigration authorities, that "commenced" the § 1326(a) offense of being "found" or encountered in the United States. *Id*. at 60-61 (explaining "the offense of being found in the United States commences on the date the defendant enters the United States").

The USPO's Addendum to the final PSR acknowledges that pursuant to the *Hernandez-Gonzalez* decision, the relevant date for purposes of the § 2L1.2(b)(2)(C) enhancement (as well as for calculating the defendant's criminal history score) is the date he reentered the country, not the date he was encountered. However, both the USPO and the defendant take the position that the defendant's repeated statements that he last reentered the United States in 2014 were either

too vague to sufficiently establish this fact, or were otherwise inaccurate (due to a purely hypothetical possibility that the agent who took the defendant's statement was not a true Spanish speaker, or that when answering the straight-forward question of when he last entered the U.S. the defendant was somehow confused by unspecified variations in regional dialect).

The defendant consistently admitted to reentering the U.S. illegally on three separate occasions, all of which are reflected in the existing record. First, the defendant admitted that he illegally reentered the United States in 2014 in his *Mirandized* sworn statement to Immigration and Customs Enforcement ("ICE") dated December 10, 2018. Second, the defendant told the USPO that he most recently reentered the country in 2014. PSR § 40. Finally – and most significantly – the defendant represented to this Court, at his guilty plea hearing, that he last reentered the country in February of 2014. Transcript of March 22, 2019 Guilty Plea Hearing, p. 5, lns. 9 – 13. Based on these admissions, the record is clear that the defendant illegally reentered the country in 2014, which is well within 15 years of his December 18, 2001 conviction and sentence for DUI. There is no ambiguity or uncertainty about the defendant's consistent and repeated admissions on this point, particularly when considered together in light of the preponderance standard. *See Grier*, *supra*.

For all of these reasons, the defendant's 2001 DUI conviction and sentence subjects him to the six level increase found at § 2L1.2(b)(2)(C). The defendant's final adjusted offense level is set forth as follows:

<u>Base Offense Level:</u>   (U.S.S.G. §2L1.2(a))            8

<u>Specific Offense Characteristics:</u>
Conviction for a felony offense for which            +6
sentence imposed exceeds one year and one month
USSG § 2L1.2(b)(2)(C)

|  |  |  |
|---|---|---|
| Total Offense Level: | | 14 |
| Acceptance of Responsibility:<br>(U.S.S.G. §3E1.1(a)) | | -2 |
| **Adjusted Offense Level:** | | **12** |

### C. Criminal History Calculation

On December 18, 2001, the defendant pleaded guilty to DUI and was sentenced to 30 days to 23 months' imprisonment. PSR ¶ 27. As set forth above, this 2001 sentence exceeded one year and one month, and was also committed within 15 years of when the defendant commenced the instant § 1326 reentry offense by illegally reentering the United States in 2014. Accordingly, this conviction warrants three (3) criminal history points under § 4A1.1(a). *See Hernandez-Gonzalez*, 495 F.3d at 61.

On January 11, 2019, the defendant pleaded guilty to DUI, in violation of 75 Pa.C.S.A. § 3802, in the Chester County Court of Common Pleas, and was sentenced to 38 days to six (6) months of incarceration. PSR ¶ 28. This conviction warrants two (2) criminal history points under § 4A1.1(b).

Accordingly, the defendant is in criminal history category III (5 criminal history points).

### D. Final Advisory Guideline Calculation

With an offense level of 12 and a criminal history category of III, the defendant's advisory guidelines range is 15 to 21 months' imprisonment. In its Addendum to the PSR, the USPO agrees that the defendant's advisory guidelines range would be 15 to 21 months' imprisonment if the defendant's 2001 felony conviction is factored into his offense level and criminal history calculations.

## V. ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a)

suggests that the Court should accept the calculation of the advisory guidelines as set forth above, review all other factors, and impose a sentence of imprisonment within the guidelines range of 15 to 21 months' incarceration.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion) (ellipsis in original)). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Id.* at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A. Analysis of the Sentencing Factors

This is a serious immigration offense committed by a recidivist defendant who has been previously removed from the United States no less than four separate times. During his unlawful tenure in this country, the defendant has been arrested for DUI three different times, and convicted twice. PSR ¶¶ 27, 28, 32. A sentence within the guidelines range of 15 to 21 months' imprisonment would adequately account for the nature and circumstances of this offense as well as the history and characteristics of the defendant, in addition to the remaining § 3553(a) factors.

    1.    <u>The nature and circumstances of the offense and the history and characteristics of the defendant</u>

The defendant is a native and citizen of Mexico; he is not a citizen of the United States. *See* PSR ¶ 34. The defendant was previously removed four times from the United States to Mexico – on February 5, 2002, March 22, 2003, February 17, 2005, and June 26, 2008. PSR ¶¶ 8 – 11. The defendant knew he was prohibited from reentering the United States each time because he was provided with such warnings by immigration officials. Despite these warnings, the defendant chose to deliberately and illegally reenter the United States time and time again.

More troubling is the defendant's failure to abide by the laws of this country and his willingness to pose a danger to the public while living here illegally. He was first arrested for DUI in 1996, the year he first entered the United States. PSR ¶¶ 32, 39. That case was put in fugitive status and eventually nolle prossed in 2000. PSR ¶ 32. On December 18, 2001, the defendant pleaded guilty to DUI in Chester County, Pennsylvania, after having been found driving while intoxicated with an open beer can in the vehicle's center console. PSR ¶ 27. Having apparently learned nothing from these two prior incidents, the defendant recently pleaded guilty to another DUI in Chester County. According to the police report, the defendant was driving with an open case of Budweiser and several open containers of beer when he crashed and

9

flipped his vehicle, trapping himself in the wreck. His breathalyzer test registered a BAC of .272%, over three times the .08% legal limit. PSR ¶ 28. Under this scenario, it is lucky the defendant did not cause serious harm or injury to others. The defendant's disregard for the laws of this country – as evidenced by his repeated illegal reentries and his history of DUI violations – are factors that warrant a within-guidelines sentence.

> 2. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense</u>

As set forth above, the defendant is a serial § 1326 violator who, while present in the United States, has failed to abide by its laws. A within-guidelines sentence would reflect the seriousness of the offense and would promote respect for the immigration laws that the defendant has habitually violated.

> 3. <u>The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant</u>

Another factor in the sentencing determination is both specific and general deterrence. As the courts of appeals have held both before and after *Booker*, deterrence under 3553(a) is not limited to deterrence of the particular defendant. *See e.g.*, *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need for general deterrence and respect for the law"); *United States v. Glover*, 431 F.3d 744, 751 (11th Cir. 2005) (noting that pre-*Booker* and post-*Booker*, "the underlying goals of the statute and the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation") (internal quotations omitted); *see also United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goal of "general deterrence, specific deterrence, retribution, and rehabilitation").

There is a compelling need for the defendant's sentence to serve the interests of both specific and general deterrence. A within-guideline sentence is necessary to deter this particular defendant from illegally re-entering the country for a fifth time. The defendant was undeterred by the numerous warnings he received in connection with his four previous removals, and a stronger message is necessary to ensure he does not attempt to illegally reenter the country once again.

There is also a strong need to afford general deterrence. Border security is critically important to national security, and this country spends significant resources to that end. Every violation of our borders by an individual like the defendant takes a toll on our country's resources and makes us more vulnerable to those who are watching and may attempt the same conduct.

        4.      <u>The need to provide the defendant with educational or vocational training</u>

There is no need to adjust the defendant's sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." 18 U.S.C. § 3553(a)(2)(D). The defendant will have the opportunity to take advantage of educational and/or vocational training provided by the Federal Bureau of Prisons while serving his term of incarceration.

        5.      <u>The guidelines and policy statements issued by the Sentencing Commission</u>

The Sentencing Commission seeks to promulgate guidelines that assure just sentences for offenders convicted for federal crimes. Here, the applicable guidelines range adequately achieves the stated goals of the Sentencing Commission.

        6.      <u>The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct</u>

The need to avoid sentencing disparities amongst similarly-situated defendants supports the imposition of a within-guidelines sentence of incarceration.

      7.    <u>The need to provide restitution to any victims of the offense</u>

Restitution is not an issue in this case. 18 U.S.C. § 3553(a)(7).

**VI.**    **<u>CONCLUSION</u>**

The defendant has spent the better part of his adult life making repeated illegal entries into this country, and has now been convicted of what was his fourth illegal reentry (and his fifth illegal entry). While living here illegally, he has demonstrated a disrespect for the laws of this country and endangered the community by recurrently driving will intoxicated. For these reasons, as well as those set forth above, a sentence of imprisonment within the advisory guidelines range of 15 to 21 months is sufficient, but not greater than necessary, to address the factors set forth in § 3553(a)(2).

    Respectfully submitted,

    WILLIAM M. MCSWAIN
    United States Attorney


    <u>/s/ Matthew T. Newcomer</u>
    Matthew T. Newcomer
    Assistant United States Attorney

Dated: June 20, 2019

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Sentencing

Memorandum has been served by first class mail and electronic mail upon the following:

Maria A. Pedraza
Federal Community Defender Office
601 Walnut Street, Suite 540W
Philadelphia, PA 19106

*Counsel for Defendant, Jose Ayala-Murrillo*

                                         /s/ Matthew T. Newcomer
                                        Matthew T. Newcomer
                                        Assistant United States Attorney

Dated: June 20, 2019